IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ELIZABETH FEDYNICH, *et al.*,
    *Pro se* Plaintiffs,

        v.                                     Civil No. 3:20cv165 (DJN)

BOULDER HOUSING PARTNERS, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiffs Elizabeth Fedynich and Nicole Fedynich (collectively, "Plaintiffs"), proceeding

*pro se*, bring this action against Boulder Housing Partners ("BHP"), Jeremy Durham, Karen

Kreutzberg, Omar Llamas and Marina Arritola (collectively, the "Boulder Defendants"), the

United States Department of Housing and Urban Development Richmond Field Office ("HUD"),

Carrie Schmidt, Robert Davenport, Wilma Henry and Edward D. Crook (collectively, the "HUD

Defendants"), the Virginia Housing and Development Authority ("VHDA"), Anton Shaw,

Patrice Freeman and Jan Sloan (collectively, the "VHDA Defendants"), the Central Virginia

Housing Coalition ("CVHC") and Barbara Woodhall (collectively, the "CVHC Defendants"),

and the Lynchburg Redevelopment Housing Authority ("LRHA"), Dawn Fagan, Chandra

Hyacinth and Janice Payne-Hubbard (collectively, the "LRHA Defendants"), (collectively,

together, "Defendants"), alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601

*et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the

American Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), and their due process rights.

This matter comes before the Court on the LRHA Defendants' Motion to Dismiss for

Failure to State a Claim (ECF No. 37), the VHDA Defendants' Motion to Dismiss for Failure to

State a Claim (ECF No. 41), the HUD Defendants' Motion to Dismiss for Failure to State a

Claim (ECF No. 43), the CVHC Defendants' Motion to Dismiss for Failure to State a Claim

(ECF No. 45) and the Boulder Defendants' Motion to Dismiss for Failure to State a Claim (ECF

No. 61). For the reasons set forth below, the Court GRANTS Defendants' Motions to Dismiss

(ECF No. 37, 41, 43, 45, 61) and DISMISSES WITHOUT PREJUDICE all claims by Plaintiffs

against Defendants.

## I.      BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

Plaintiffs' well-pleaded factual allegations as true, though the Court need not accept Plaintiffs'

legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, because Plaintiffs

proceed *pro se*, the Court will afford their Amended Complaint a liberal construction. *Erickson

v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court need not create claims where Plaintiffs

have failed to plausibly allege them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.

1985). With these principles in mind, the Court accepts the following facts.

### B.      Factual Allegations and Plaintiffs' Amended Complaint.[1]

Pursuant to the Housing Act of 1937, Congress enacted Section 8 Housing Programs to

help low-income families obtain decent, affordable housing. 42 U.S.C. § 1437. Under the

Housing Choice Voucher ("HCV") Program, HUD allocates federal funds to a local Public

Housing Authority ("PHA"), which then distributes those funds to supplement the rent and utility

costs for low-income tenants participating in the HCV Program. 42 U.S.C. § 1437(o). Plaintiffs

are low-income tenants participating in the HCV Program.

---

[1]      Plaintiff Elizabeth Fedynich filed her original complaint on March 9, 2020. (ECF No. 7.)
With leave of the Court, Plaintiff filed her Amended Complaint on April 28, 2020, adding her
daughter, Nicole Fedynich, as a plaintiff. (ECF No. 29.)

In June 2019, Plaintiffs lived in Lynchburg, Virginia. (Am. Compl. at 8.) Around that time, Plaintiffs sought to move out of their home and into a new residence, citing violence in their neighborhood and ongoing harassment from neighbors. (Am. Compl. at 8.) LRHA administered Plaintiffs' HCV at that time, so Plaintiffs contacted LRHA to request an expedited inspection of a new residence that they had found. (Am. Compl. at 8.) They requested this accommodation, because they had limited housing options that suited their disabilities. (Am. Compl. at 8.) LRHA denied their request. (Am. Compl. at 8.)

Subsequently, Defendant Chandra Hyacinth ("Defendant Hyacinth"), a Compliance Officer with LRHA, explained to Plaintiffs that LRHA denied their request, because unpleasant dealings with neighbors did not qualify them for an accommodation. (Am. Compl. at 8.) Plaintiffs responded that "the trauma from being threatened by [their] neighbors" required an accommodation, because of their ongoing mental health needs. (Am. Compl. at 8.) Following this interaction, Plaintiffs allege that Defendant Hyacinth did not respond to their repeated requests for additional (unspecified) accommodations and, ultimately, that no one from LRHA engaged in an interactive process. (Am. Compl. at 8.)

A few months later, in September or October 2019, Plaintiffs requested an extension of their HCV, noting that they needed this extension because of their disabilities and the hurdles that they faced when trying to find a new home suitable for those disabilities. (Am. Compl. at 8.) LRHA denied the request, explaining that to receive a HCV extension, Plaintiffs needed to compile and submit a complete list of all of the housing options to which they had applied. (Am. Compl. at 8.) Plaintiffs assert that they were not aware of this requirement, that no other PHA had ever required them to meet this requirement and, further, that the requirement caused them undue hardship, because they could not remember all of the housing options to which they had

3

applied.  (Am. Compl. at 8.)  Plaintiffs further contend that a two-month HCV extension

remained a standard practice at many other PHAs.  (Am. Compl. at 8.)

      In early November 2019, Plaintiffs found a housing option that suited their needs.  (Am.

Compl. at 8.)  Upon finding this housing option, Plaintiffs requested an increase in their HCV to

cover the higher cost of rent.[2]  (Am. Compl. at 8.)  LRHA initially denied this request, citing

Plaintiffs' failure to use a required form.  (Am. Compl. at 8.)  LRHA eventually approved

Plaintiffs' request.  (Am. Compl. at 8.)  However, the landlord ultimately decided to rent the

residence to someone else.  (Am. Compl. at 8.)

      Following this incident, Plaintiffs again requested an extension of their HCV.  (Am.

Compl. at 8.)  Plaintiffs requested an additional thirty days.  (Am. Compl. at 8.)  LRHA denied

Plaintiffs' request and informed Plaintiffs that they had twelve days remaining on their HCV to

find a new home.  (Am. Compl. at 8.)  In the alternative, LRHA told Plaintiffs that they could

port their HCV to another location and PHA.[3]  (Am. Compl. at 8.)  Plaintiffs also allege that

Defendant Hyacinth repeatedly asked Plaintiff Elizabeth Fedynich if she wanted to surrender her

voucher.  (Am. Compl. at 8.)  And Defendant Hyacinth allegedly threatened to terminate

Plaintiffs' housing assistance.  (Am. Compl. at 8.)  Around this time, LRHA employees stopped

answering Plaintiffs' phone calls and emails.  (Am. Compl. at 8.)  Ultimately, Plaintiffs assert

---

[2]    Plaintiffs state that they contacted the HUD Office in Richmond, Virginia, for assistance in this matter.  (Am. Compl. at 8.)  However, Plaintiffs do not elaborate on how HUD may have intervened.

[3]    Within the context of the HCV Program, the term "port" or "portability" refers to the process by which a family or individual can transfer or "port" their rental subsidy to a new location, including a new location outside the jurisdiction of the original PHA that issued the HCV.  U.S. Dep't. of Hous. & Urban Dev., *Portability*, https://www.hud.gov/program_offices/ public_indian_housing/programs/hcv/portability.

that "at no point in any dealing" with LRHA did any employee engage in an appropriate interactive process. (Am. Compl. at 8.)

Plaintiffs continued to request additional extensions on their HCV, all of which LRHA denied. (Am. Compl. at 9.) In general, Plaintiffs cited vague health concerns in support of their requests, though Plaintiffs relayed that on December 4, 2019, Plaintiff Elizabeth Fedynich fell in her storage unit and tore her meniscus, rendering her unable to walk without crutches. (Am. Compl. at 9.) Nonetheless, LRHA denied Plaintiffs requests and continued to warn Plaintiffs that it would terminate the HCV if they did not comply with the HCV Program requirements. (Am. Compl. at 9.)

At this point, Plaintiffs assert that the Boulder Defendants became involved. (Am. Compl. at 9.) Specifically, from what the Court can gather from Plaintiffs' allegations and the Boulder Defendants' Memorandum in Support of their Motion to Dismiss, in 2019, Plaintiffs ported their HCV from Boulder, Colorado, where BHP administered it, to Virginia. (Am. Compl. at 9; Boulder Defendants' Br. in Supp. of Mot. to Dismiss ("Boulder Mem.") (ECF No. 62) at 5-6.) In December 2019 or early January 2020, Plaintiffs reached out to BHP to request an extension on their HCV. (Am. Compl. at 9.) Defendant Marina Arritola, a BHP employee, denied the request and told Plaintiffs that LRHA, as the PHA administering their HCV, needed to approve the request. (Am. Compl. at 9.) However, LRHA employees continued to ignore Plaintiffs' repeated extension requests. (Am. Compl. at 9.)

After BHP and LRHA denied their requests, Plaintiffs attempted to involve HUD employees Robert Davenport ("Defendant Davenport") and Carrie Schmidt ("Defendant Schmidt") by copying them on emails. (Am. Compl. at 9.) However, Defendants Davenport and Schmidt ignored Plaintiffs' emails. (Am. Compl. at 9.) Eventually, Defendant Hyacinth

responded to Plaintiffs' emails and told them that BHP needed to approve any HCV extensions. (Am. Compl. at 9.)  In conjunction, Defendant Hyacinth sent information relevant to the HCV extension request to BHP.  (Am. Compl. at 9.)  Plaintiffs assert that this communication contained "inaccurate, misleading, and dishonest information." (Am. Compl. at 9.)  According to Plaintiffs, BHP refused to assist them as a result of this misinformation.[4]  (Am. Compl. at 10.)

Plaintiffs also provided letters from their physicians to both LRHA and BHP.  (Am. Compl. at 10.)  According to Plaintiffs, these letters explained why they required additional time on their HCV and the housing specifications that their disabilities required. (Am. Compl. at 10.)  Neither LRHA nor BHP accepted the letters as a sufficient basis for granting an HCV extension. (Am. Compl. at 10.)

Plaintiffs assert that "under duress, coercion and threat of losing their [HCV]," they ported their voucher in Fredericksburg, Virginia, where Plaintiffs placed their voucher with CVHC. (Am. Compl. at 10-11.)  Upon porting their voucher in Fredericksburg, Plaintiffs requested another extension on their HCV. (Am. Compl. at 11.)  CVHC — specifically, Defendant Barbara Woodall ("Defendant Woodall"), a CVHC Housing Agent — denied Plaintiffs' request. (Am. Compl. at 11.)  Defendant Woodall denied several other requests, including a request for a higher payment standard. (Am. Compl. at 11.)  Plaintiffs assert that these denials were made without any interactive process. (Am. Compl. at 11.)  Plaintiffs further allege that Defendant Woodall and other CVHC employees acted with the specific intent to deliberately sabotage Plaintiffs' attempts to find a home. (Am. Compl. at 11.)

---

[4]     Plaintiffs indicate that BHP denied Plaintiffs' requests on three other occasions. (Am. Compl. at 10.)  Each of these requests involved Plaintiffs' seeking an extension of their HCV. (Am. Compl. at 10.)  It remains unclear whether these three other occasions coincide with the requests at issue.  Nonetheless, Plaintiffs assert that BHP denied these accommodation requests despite receiving ample evidence of "numerous health issues." (Am. Compl. at 10.)

After Plaintiffs faced difficulties with CVHC, they turned to VHDA for assistance.  (Am. Compl. at 11.)  Plaintiffs attempted to work with several VHDA employees, including Defendant Patrice Freeman ("Defendant Freeman"), Defendant Anton Shaw ("Defendant Shaw") and Defendant Jan Sloan ("Defendant Sloan").  (Am. Compl. at 11.)  Plaintiffs assert that communication broke down with Defendant Freeman, that Defendant Shaw told them that their only path forward was litigation and that Defendant Sloan refused to answer their questions.  (Am. Comp. at 11.)  Despite Plaintiffs' accusations against CVHC, VHDA and other PHAs, Plaintiffs acknowledge that CVHC approved Plaintiffs' higher payment standard request.  (Am. Compl. at 11.)  Indeed, Plaintiffs admit that Betty Newbury, a CHVC employee, helped Plaintiffs obtain a two-bedroom payment standard, instead of their original (and smaller) one-bedroom payment standard.  (Am. Compl. at 11.)

Plaintiffs conclusively assert that throughout this process, the HUD Defendants remained involved and unhelpful.  (Am. Compl. at 12.)  For example, Plaintiffs assert that they tried to work with Defendant Edward Crook ("Defendant Crook"), Program Management Specialist at HUD, but that Defendant Crook demonstrated a "profound ignorance of HUD laws" and antagonized Plaintiffs.  (Am. Compl. at 12.)  Plaintiffs also worked with Defendant Wilma Henry ("Defendant Henry"), Portfolio Management Specialist at HUD, who demonstrated hostility and a "blatant disregard and ignorance of and unwillingness to apply HUD laws."  (Am. Compl. at 12.)  Plaintiffs also allege that Defendant Henry made discriminatory comments about Plaintiffs' disabilities as they related to the outbreak of Coronavirus Disease 2019 ("COVID-19").  (Am. Compl. at 12.)  Although they do not specify the accommodation that they sought from Defendant Davenport, Plaintiffs assert that he failed to engage in an interactive process and ignored Plaintiffs' repeated requests for additional accommodations.  (Am. Compl. at 12.)

7

Plaintiffs further assert that Defendant Schmidt refused to communicate with them and failed to direct her staff to apply HUD laws as they pertained to reasonable accommodation requests. (Am. Compl. at 12.)  Ultimately, Plaintiffs assert that Defendants discriminated against them based on their disabilities.  (Am. Compl. at 12.)

Based on these allegations, Plaintiffs claim that Defendants violated their civil rights by failing to provide them with reasonable accommodations in the HCV Program.  Specifically, Plaintiffs appear to allege that Defendants violated the FHA, the ADA, Section 504 of the RA and their due process rights under the Fifth and Fourteenth Amendments.  Based on these claims, Plaintiffs seek $2,068,920.00 in damages, as well as punitive damages against all parties, both "organizationally and individually."  (Am. Compl. at 13.)

## C.     Defendants' Motions to Dismiss.

Now before the Court are five motions to dismiss Plaintiffs' Amended Complaint.  The LRHA Defendants filed their Motion to Dismiss the Amended Complaint on May 12, 2020. (ECF No. 37.)  The LRHA Defendants argue that the Court should dismiss Plaintiffs' FHA claims, because Plaintiffs fail to plausibly allege that they suffer from any disabilities or that a nexus exists between their alleged disabilities and the requested accommodations.  (Br. in Supp. of LRHA Defs.' Mot. to Dismiss Am. Compl. ("LRHA Mem.") (ECF No. 38.) at 4-6.) Similarly, because Plaintiffs do not allege any facts that give rise to a reasonable inference that Plaintiffs are disabled, the LHRA Defendants contend that Plaintiffs' ADA and RA claims must be dismissed.  (LRHA Mem. at 7.)

As for Plaintiffs' due process claims, the LRHA Defendants assert that Plaintiffs fail to identify a protected property interest of which Defendants deprived them without due process. (LRHA Mem. at 8-10.)  In their Response, Plaintiffs assert they have sufficiently pled facts to

8

survive the motion-to-dismiss stage, given that they proceed *pro se*.  (Opp. to LRHA Defs.' Mot to Dismiss ("Pls.' LRHA Opp.") (ECF No. 47) at 1-2.)

Separately from the LHRA Defendants, on May 20, 2020, the VHDA Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint.  (ECF No. 41.)  The VHDA Defendants argue that the Court should dismiss Plaintiffs' FHA and RA claims, because Plaintiffs fail to specify any disability and have failed to demonstrate the reasonableness or necessity of their requested accommodations.  (VHDA Defs.' Mem. in Supp. of Mot. to Dismiss ("VHDA Mem.") (ECF No. 42) at 5-6.)  Regarding Plaintiffs' due process claims, the VHDA Defendants argue that Plaintiffs make only conclusory allegations that the VHDA Defendants deprived them of due process.  (VHDA Mem. at 6.)  And the VHDA Defendants note that Plaintiffs in fact acknowledge that VHDA granted Plaintiffs a partial accommodation.  (VHDA Mem. at 6. )

The HUD Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint on May 20, 2020.  (ECF No. 43.)  In support of their Motion, the HUD Defendants argue that sovereign immunity bars Plaintiffs' claims against them to the extent that Plaintiffs sue the HUD Defendants in their official capacities.  (HUD Defs.' Mem. in Supp. of Mot. to Dismiss ("HUD Mem.") (ECF No. 44.) at 6-8.)  As with the other Defendants, the HUD Defendants assert that Plaintiffs also fail to state a claim under either the FHA or RA, because they have failed to sufficiently allege a qualifying disability.  (HUD Mem. at 9-11.)  Finally, the HUD Defendants assert that even if Plaintiffs had sufficiently pled facts to support their due process claims, Plaintiffs are barred from bringing a *Bivens* action against HUD or its employees in their official capacities.  (HUD Mem. at 11. (citing *Bivens v. Unknown Named Agents*, 403 U.S. 338 (1971).)

Plaintiffs responded to the HUD Defendants' Motion to Dismiss on June 10, 2020, filing an Opposition to the HUD Motion and a Supplemental Brief.  (Pls.' Opp. to HUD Mot. to

Dismiss ("Pls.' HUD Resp.") (ECF No. 49); Pls. Supplemental Opp. to HUD Mot. to Dismiss

("Pls.' HUD Supplement") (ECF No. 50).)  In their Response, Plaintiffs again request leeway in

drafting their Amended Complaint, because they proceed *pro se*.  (Pls.' HUD Resp. at 2.)  And

Plaintiffs also challenge HUD's assertion of sovereign immunity.  (Pls.' HUD Supplement at 3-

5.)

On May 20, 2020, the CVHC Defendants filed a Motion to Dismiss Plaintiffs' Amended

Complaint.  (ECF No. 45.)  Specifically, the CVHC Defendants assert that Plaintiffs have failed

to allege any disabilities with specificity and have not plausibly demonstrated a nexus between

their alleged disabilities and accommodation requests, requiring dismissal of Plaintiffs' FHA and

RA claims.  (CVHC Br. in Supp. of Mot. to Dismiss ("CVHC Mem.") (ECF No. 46) at 6-8.)

Regarding Plaintiffs' due process claims, the CVHC Defendants argue that Plaintiffs have not

identified any valid property interest, adding that the HUD regulations upon which Plaintiffs rely

do not create any enforceable rights.  (CVHC Mem. at 8-11.)

Plaintiffs responded to the CVHC Defendants' Motion on June 10, 2020, filing an

Opposition to the CVHC Motion and a Supplemental Brief.  (Pls.' Opp. to CVHC Mot. to

Dismiss ("Pls.' CVHC Resp.") (ECF No. 48); Pls. Supplemental Opp. to CVHC Mot. to Dismiss

("Pls.' CVHC Supplement") (ECF No. 51).)  In both briefs, Plaintiffs cite various statutes, as

well as unidentified caselaw, to support the assertion that they have sufficiently pled their claims

at this stage.  (Pls.' CVHC Supplement at 2-6.)  The CVHC Defendants filed a Reply on June 16,

2020, reasserting their original arguments.  (CVHC Reply Br. in Supp. of Mot. to Dismiss

("CVHC Reply") (ECF No. 52).)

Finally, the Boulder Defendants filed a Motion to Dismiss on July 22, 2020.  (ECF No.

61.)  The Boulder Defendants first argue that the Court should dismiss all claims against them,

10

because Plaintiffs failed to serve any of the Boulder Defendants in a timely manner. (Boulder

Defs.' Br. in Supp. of Mot. to Dismiss ("Boulder Mem.") (ECF No. 62) at 4.) Like the other

Defendants, the Boulder Defendants also argue that Plaintiffs fail to state either a FHA or RA

claim, because they have not pled facts that support the existence of any disability or

demonstrated the reasonableness or necessity of their requested accommodations. (Boulder

Mem. at 5-6.) Regarding Plaintiffs' due process claims, the Boulder Defendants argue that

Plaintiffs make only conclusory allegations that Defendants denied them due process. (Boulder

Mem. at 7.)

Plaintiffs filed their response to the Boulder Defendants' Motion on August 12, 2020.

(Pls.' Opp. to Boulder Defs.' Mot. to Dismiss ("Pls.' Boulder Resp.") (ECF No. 65).) In their

Response, Plaintiffs argue that the Court should not dismiss for lack of timely service, because,

as *pro se* litigants, the Court provided them the mechanism for service — mechanisms that were

out of their control. (Pls.' Boulder Resp. at 1.) Plaintiffs also cite the ongoing COVID-19

pandemic. (Pls.' Boulder Resp. at 1.) As for the merits of their claims, Plaintiffs assert that the

Boulder Defendants knew about their alleged disabilities and that that the Boulder Defendants

deprived them of a property interest without due process when they denied Plaintiffs' request for

an HCV extension. (Pls.' Boulder Resp. at 2-2.)

## II.    STANDARD OF REVIEW

A complaint need only contain "a short, plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule

12(b)(6) tests the sufficiency of a complaint or a counterclaim. *Republican Party of N.C. v.*

*Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A claim or counterclaim must state facts sufficient to

"'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Further, the facts alleged must be sufficient to "state all elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Ultimately, "[t]o survive a motion to dismiss, a claim must contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

When evaluating a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded allegations. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). However, "'naked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 183, 186 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Because Plaintiffs proceed *pro se,* the Court construes Plaintiffs' complaint liberally. *Erikson*, 551 U.S. at 94 (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also Laber v. Harvey,* 438 F.3d 404, 413 n.3 (4th Cir. 2006) (explaining that *pro se* complaints are afforded a liberal construction). Indeed, a "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues," *Jehovah v. Clarke,* 798 F.3d 169, 176 (4th Cir. 2015) (citing *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir.2009) (alteration in original)). However, the court need not attempt to "discern the unexpressed intent of the plaintiff," *Laber*, 438 F.3d at 413, nor does the requirement of liberal construction excuse a complete failure to allege a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990). Indeed, courts are not required to "conjure up and

12

decide issues never fairly presented to them." *Lucas v. Henrico Cty. Pub. Sch. Bd.*, 2019 WL

5791343, at *2 (E.D. Va. Nov. 6, 2019).

## III.   ANALYSIS

Plaintiffs appear to bring claims under the FHA of 1988, 42 U.S.C. §§ 3601 *et seq*, the

ADA, 42 U.S.C. §§ 1210 *et seq.*, and Section 504 of the RA, 29 U.S.C. § 794, as well as a

constitutional claim alleging violations of their due process rights.  The Court will address the

sufficiency of these claims in turn.[5]

### A.   The Court Will Not Dismiss Plaintiffs' Claims Against the Boulder Defendants for Failure to Serve Process in a Timely Manner.

As a threshold matter, the Boulder Defendants argue that the Court should dismiss

Plaintiffs' claims against them, because Plaintiffs failed to serve them until after the ninety days

for service allowed under the Federal Rules of Civil Procedure.  (Boulder Mem. at 4.)  Indeed,

Federal Rule of Civil Procedure 4(m) states, in relevant part, that:

> If a defendant is not served within 90 days after the complaint is filed, the court
> — on motion or on its own after notice to the plaintiff — must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

---

[5]    The HUD Defendants argue that the claims brought against them are barred by sovereign immunity. (HUD Mem. at 6-8.)  Although the Court would typically address any questions of jurisdiction — including sovereign immunity — first, because the Amended Complaint fails to specify the precise contours of the substantive claims against the HUD Defendants, the Court cannot accurately engage in an analysis as to whether the government waived sovereign immunity in this instance.  Indeed, based on the facts presented, the Court cannot determine which claims Plaintiffs assert against the HUD Defendants and whether Plaintiffs bring this suit against the HUD Defendants in their individual or official capacities.  Accordingly, the Court will instead dismiss Plaintiffs' Amended Complaint for failure to state any claims upon which relief may be granted.

Fed. R. Civ. P. 4(m). A plaintiff may escape dismissal for failure to timely serve process if she demonstrates "good cause" for the delay or if the district court exercises its discretion to extend the time for service. *Collins v. Thornton*, 782 F. App'x 264, 266 (4th Cir. 2019).

Here, Plaintiffs did not serve the Boulder Defendants until 114 days after Plaintiff Elizabeth Fedynich filed her original Complaint, and after Plaintiffs filed their Amended Complaint. (ECF No. 7; Boulder Mem. at 4.) Although Plaintiffs did not serve the Boulder Defendants within the time allowed under Rule 4(m), the Court will excuse this failure, because Plaintiffs' claims have not progressed beyond the motion-to-dismiss stage and the Court has not conducted an initial pretrial conference, meaning the Boulder Defendants suffered little prejudice from the delay in service. Moreover, the Court finds good cause for an extension, because Plaintiffs proceed *in forma pauperis*, meaning that the United States Marshal, not Plaintiffs, handled service. (ECF Nos. 4, 8.)

Indeed, the Fourth Circuit has repeatedly "recognized that in forma pauperis plaintiffs 'must rely on the district court and the [United States Marshals Service] to effect service,' and should not be penalized for delay in service beyond their control." *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 305 (4th Cir. 2016) (quoting *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010)). Moreover, the Fourth Circuit has expressly held that when, as here, a plaintiff provides "the Marshals with the correct information to serve a defendant, a subsequent failure to effect service upon that defendants constitutes 'good cause' for an extension." *Brooks v. Johnson*, 924 F.3d 104, 121 (4th Cir. 2019) (citing *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1287 (11th Cir. 2009) (collecting cases)). Accordingly, the Court finds good cause to

retroactively extend the time for service, and, therefore, the Court will not dismiss Plaintiffs' claims against the Boulder Defendants for failure to timely serve process.[6]

### B.      Plaintiffs Fail to State Any Claim Under the Fair Housing Act.

Plaintiffs allege violations of the FHA against each Defendant. (Am. Compl. at 6, 8-12.) The Court interprets Plaintiffs' claims to allege that Defendants discriminated against Plaintiffs by failing to provide them reasonable accommodations under the FHA, specifically in violation of 42 U.S.C. § 3604. Defendants argue that Plaintiffs fail to state any facts that sufficiently allege a qualifying disability under the FHA. Moreover, Defendants assert that Plaintiffs fail to plead facts that demonstrate a nexus between Plaintiffs' alleged disabilities and their requested accommodations. The Court agrees with Defendants.

The FHA prohibits discrimination in housing on the basis of certain enumerated classifications, including a "handicap."[7]  42 U.S.C. §§ 3601 *et seq*. Specifically, the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." § 3604(f)(2)(A). The FHA defines "handicap" as: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or, (3) being regarded as having such an impairment. § 3602(h). The term "major life activities" refers to "those activities that are of

---

[6]      The Court also notes the unique circumstances caused by the going COVID-19 pandemic that continues to take a toll on this country and affect all aspects of the judicial system.

[7]      The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). Accordingly, the Court uses these words interchangeably.

central importance to daily life." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (internal quotations and citations omitted). Discrimination under the FHA includes a refusal "to make reasonable modifications of existing premises" or "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3).

To state a claim alleging a failure to accommodate under the FHA, a plaintiff must show that (1) she suffers from a disability under the definition set out in the FHA, (2) the defendant knows of the disability or reasonably should know, (3) the accommodation is reasonable and necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling, and (4) the defendant refused to make such an accommodation. *Roberson v. Graziano*, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), *aff'd*, 411 F. App'x 583 (4th Cir. 2011) (citing 42 U.S.C. § 3604(f)); *see also Bryant Woods Inn v. Howard Cty.*, 124 F.3d 597, 603-04 (4th Cir. 1997) (finding that a plaintiff must show that a requested accommodation proved "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing"). Further, a plaintiff must plead facts that demonstrate a sufficient nexus between the alleged disability and discriminatory act — in this case, the accommodation denial. *Hardaway v. Equity Residential Mgmt., LLC*, 2012 WL 3903489, at *6 (D. Md. Sept. 6, 2012) (dismissing FHA claims where "[i]n addition to failing to elaborate on the nature of [the plaintiff's] disability, [the plaintiff has] not alleged a plausible nexus between her disability and the alleged discriminatory acts").

Here, Plaintiffs fail to plausibly allege that they suffer from any disabilities as defined under the FHA. Instead, Plaintiffs simply reference "mental health needs," "disabilities," "medical conditions" and "health issues." (Am. Compl. at 8-12.) However, to state a claim

under the FHA, a plaintiff must do more than label herself as disabled. *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016). Moreover, although Plaintiffs allege that they provided letters from their physicians to the PHAs that declined their accommodation requests, Plaintiffs do not name the medical conditions that their physicians identified as causing their disability. (Am. Compl. at 10.) At bottom, these allegations do not give rise to a "reasonable inference" that Plaintiffs suffered from a "handicap," as defined under the FHA.[8] *Iqbal*, 556 U.S. at 678.

Furthermore, even if Plaintiffs plausibly alleged that they suffered from a handicap under the FHA, Plaintiffs fail to allege a single — let alone a plausible — nexus between their alleged disabilities and the proffered discriminatory acts. Nor have Plaintiffs identified how the requested accommodations proved necessary to afford them with an equal opportunity to use or enjoy a dwelling.

Plaintiffs made several types of accommodation requests to each of the PHAs. From LHRA, Plaintiffs requested an expedited inspection, several HCV extensions and a larger payment standard. (Am. Compl. at 8.) Plaintiffs also sought an extension on their HCV from the Boulder Defendants. (Am. Compl. at 9.) And from CVHC, Plaintiffs requested an extension

---

[8]    In their Amended Complaint, Plaintiffs elaborate on only one of their numerous alleged injuries. Specifically, Plaintiffs state that on December 4, 2019, Plaintiff Elizabeth Fedynich fell in her storage unit and tore her meniscus, rendering her unable to walk without crutches. (Am. Compl. at 9.) Plaintiffs do not specifically identify this injury as one of the alleged disabilities. And indeed, this one-off accident occurred nearly six months after the start of the relevant HCV process. (Am. Compl. at 9.) Moreover, this injury appears to have been temporary in nature. (*See* Am. Compl. at 9 (implying that Plaintiff required crutches during the winter following her injury).) Thus, the Court can only speculate that Plaintiff Elizabeth Fedynich suffered from an ongoing disability rather than a temporary injury, foreclosing Plaintiffs' FHA claims. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (citation and internal quotation marks omitted) (holding that sporadic or intermittent manifestations of an injury are insufficient to establish a substantial limitation on a major life activity).

on their HCV and a larger payment standard.[9]  Notably, Plaintiffs do not specify what

accommodations they sought from VHDA; rather, they explain that they turned to VHDA when

experiencing problems with CVHC.  (Am. Compl. at 11.)  Therefore, the Court must assume that

Plaintiffs sought an extension of their HCV and a larger payment standard from VDHA, as well.

Likewise, although they assert that the HUD Defendants did not engage in an interactive process,

Plaintiffs do not specify what accommodations they sought from those Defendants.  Beyond

stating that they requested these accommodations, Plaintiffs have not provided any facts that

establish a nexus between their unidentified disabilities and the requested accommodations or the

alleged discriminatory acts.  Indeed, because Plaintiffs have not specified the extent of their

alleged disabilities, the Court can only speculate as to how those factors relate, defeating

Plaintiffs' FHA claims.

Ultimately, because Plaintiffs merely label themselves as disabled and fail to identify any

plausible nexus between their alleged disabilities, their requested accommodations and

Defendants' alleged discrimination, Plaintiffs have failed to state a claim upon which relief may

be granted.  Therefore, the Court will dismiss Plaintiffs' FHA claims against all Defendants.

### C.  Plaintiffs Fail to State Any Clam Under Either the Americans with Disabilities Act or the Rehabilitation Act.

Plaintiffs also allege violations of the ADA and the RA against each Defendant.  (Am.

Compl. at 6, 8-12.)  Specifically, Plaintiffs argue — albeit indirectly — that each Defendant

failed to accommodate them and their disabilities, as required under the ADA and RA.  (Am.

---

[9]      Plaintiffs also make general complaints about the methods that CVHC used to calculate Plaintiffs' payment standards.  (Am. Compl. at 11.)  However, Plaintiffs do not specifically allege that they sought this accommodation request due to alleged disabilities regarding these calculations; rather, they appear to merely disagree with CHVC's process and requirements. (AM. Compl. at 11.)  And indeed, these calculations underlie Plaintiffs' request for a larger payment standard — a request that CVHC granted.  (Am. Compl. at 11.)

Compl. at 6, 8-12.)  As with Plaintiffs' FHA claims, Defendants argue that Plaintiffs have failed to plausibly allege a qualifying disability under either the ADA or the RA.  (Boulder Mem. at 6; HUD Mem. at 10; VHDA Mem. at 5-6; CVHC Mem. at 7-8; LRHA Mem. at 7-8.)  In response, Plaintiffs reassert that they suffer from disabilities and further claim that each Defendant knew about those disabilities.  (Pls.' CVHC Resp. at 2; Pls.' Boulder Resp. at 2.)  The Court agrees with Defendants.

Although the ADA and RA are distinct statutes, the analyses under both statutes are "substantially the same." *Seremeth v. Bd. Of Ct. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) (quoting *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 n. 9 (4th Cir.1995)); *see also Taylor v. Hampton Roads Regional Jail Authority*, 550 F. Supp. 2d 614, 616 (E.D. Va. 2008) ("The elements of a claim under the ADA and the Rehabilitation Act are the same.")  Indeed, the ADA states in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132; whereas, § 504 of the RA states in relevant part that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a).

To survive a motion to dismiss under either statute, a plaintiff must plausibly allege that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)

(citing *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir.1999); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 & n. 9 (4th Cir.1995)).  As for the first prong, the ADA and RA both define "disability" as a physical or mental impairment that substantively limits one or more major life activities, a record of such an impairment or being regarded as having such an impairment.  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1).  To state a claim under this definition, a plaintiff must identify her disability; otherwise, the Court can only speculate that the plaintiff is actually disabled.  *Bakra v. RST Mktg.*, 2019 WL 3459251, at *2 (W.D. Va. July 31, 2019) ("'The defendant in a disability discrimination suit does not have fair notice when the plaintiff fails to identify his disability.'" (quoting *Tate v. SCR Medical Transp.*, 809 F.3d 343, 345-46 (7th Cir. 2015) (citations omitted))).  Here, Plaintiffs fail to meet this standard.

Indeed, as explained above, Plaintiffs have not alleged any specific facts that identify a plausible disability sufficient to state a claim under either the ADA or the RA.  Instead, throughout their Amended Complaint, Plaintiffs simply reference "mental health needs," "disabilities," "medical conditions" and "health issues."  (Am. Compl. at 8-12.)  Even though Plaintiffs assert that Defendants knew about these disabilities, (Pls.' CVHC Resp. at 2; Pls.' Boulder Resp. at 2), Plaintiffs fail to identify or even describe the nature of these alleged disabilities.  And although Plaintiffs specify that on December 4, 2019, Plaintiff Elizabeth Fedynich tore her meniscus after a fall, they do not allege any facts to support the inference that this injury caused more than a sporadic or temporary impairment such that it would qualify as a "disability" under the ADA or the RA.  *See Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 257 (4th Cir. 2006) ("Sporadic or otherwise temporary impairments do not qualify as substantial limitations." (citing *Rohan*, 375 F.3d at 276)).  Neither have Plaintiffs alleged any facts to

support the inference that Defendants discriminated against them or otherwise denied them benefits or services "on the basis of" the meniscus tear. *Constantine*, 411 F.3d at 498.

Ultimately, as with their FHA claims, Plaintiffs' ADA and RA claims must fail, because Plaintiffs fail to allege with sufficient particularity either a disability from which they suffered or a nexus between that disability and Defendants' allegedly discriminatory conduct. Accordingly, the Court will dismiss Plaintiffs' ADA and RA claims against all Defendants.

### D.    Plaintiffs Fail to Sufficiently Allege a Due Process Violation Against Any Defendant.

Finally, Plaintiffs allege that Defendants violated their due process rights. (Am. Compl. 6, 8-12.) Specifically, from what the Court can gather, Plaintiffs assert that by denying their accommodation requests without engaging in an interactive process, Defendants violated Plaintiffs' due process rights by depriving them of a property interest — namely, their requested accommodations — without due process of law. However, the Court finds that Plaintiffs have not identified any cognizable property or liberty interests to which their due process rights might have attached, foreclosing their constitutional claims.

The Fourteenth Amendment to the Constitution prohibits state actors from depriving an individual of life, liberty or property without due process of law. U.S. Const. Amend. XIV, § 1. Relevant here, the Fifth Amendment has been interpreted to prohibit federal actors in the same way. *Dusenberry v. United States*, 534 U.S. 161, 167 (2002). To state a claim under either Amendment, a plaintiff must (1) identify a cognizable liberty or property interest and (2) show that a state actor deprived her of that interest (3) without due process of law. *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). If a plaintiff cannot identify a cognizable liberty or property interest, her due process claim must fail. *See Mills v. Holmes*, 95

21

F. Supp. 3d 924, 931 (E.D. Va. 2015) ("If no 'life, liberty, or property' interest within the meaning of the Constitution is in issue, then there can be no deprivation of constitutional due process."); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

Here, because Plaintiffs brought their due process claims against local, state and federal defendants, the methods by which Plaintiffs may bring their claims differ. Accordingly, the Court will first address Plaintiffs' claims against the state and local defendants, before turning to the HUD Defendants.

### 1. The Court Will Dismiss Plaintiffs' Constitutional Claims Against the LRHA Defendants, the VHDA Defendants, the CVHC Defendants and the Boulder Defendants.

The Court assumes that Plaintiffs bring their claims against the LRHA Defendants, the VHDA Defendants, the CVHC Defendants and the Boulder Defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides a remedy for the deprivation of constitutional rights by any person acting under color of state law. It "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To seek redress through § 1983, a plaintiff must assert a violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). To survive a motion to dismiss and state a cognizable claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege that a defendant's personal act or omission lead to the deprivation of a federal right. *Fisher v. Wash.*

22

*Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

Here, Plaintiffs fail to allege any cognizable liberty or property interest of which they were deprived. Indeed, Plaintiffs' due process claim relies on allegations that Defendants denied their accommodation requests without an interactive process; however, the Court finds that Plaintiffs lacked any liberty or property interest in their accommodation requests, defeating their due process claims.

For one, Plaintiffs received two of the accommodations that they requested, namely: a voucher for larger housing and an increased payment standard. (Am. Compl. at 9-11.) Because Plaintiffs received these accommodations, the Court cannot discern a property interest of which Plaintiff were deprived without due process of law.

As for Plaintiffs' request for an HCV extension, at least one circuit court has held that individuals do not have a property interest in a housing voucher extension. *See Burgess v. Alameda Hous. Auth.*, 98 F. App'x 603, 605 (9th Cir. 2004) (affirming that a plaintiff did not have a constitutionally protected property interest in an extension of a Section 8 housing voucher). Indeed, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it," and "must, instead, have a legitimate claim of entitlement to it." *Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 849 (11th Cir. 2015). Plaintiffs cannot establish a "legitimate claim of entitlement" to the continued extension of their voucher, because the decision to extend a term of a voucher remains in the discretion of the PHA considering the request. *Id.* (citing 24 C.F.R. § 982.303(b)); *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). In fact, the regulations governing voucher extensions expressly provide

23

that "[a]t *its discretion*, the PHA may grant a family one or more extensions of the initial voucher term in accordance with [its] policy." 24 C.F.R. § 982.303(b) (emphasis added). Accordingly, the regulations have established no legitimate expectation, much less a right, to an HCV extension. *Burgess*., 98 F. App'x at 605.

Finally, when Plaintiffs sought to move in June 2019, they requested an expedited inspection of a new home, which LRHA denied. (Am. Compl. at 8.) However, again, Plaintiffs fail to establish more than "an abstract need or desire" for the expedited inspection. *Ely*, 605 F. App'x at 849 (quoting *Roth*, 408 U.S. at 577 (1972)). Likewise, although the regulations require a housing inspection by the PHA administering a HCV within fifteen days of a tenant notifying them of their desire to lease a new dwelling, 24 CFR § 982.305(b), the regulations do not suggest that tenants have any right to an "expedited inspection." Instead, a PHA can decide when, within that allotted time, it will conduct the inspection. And for larger PHAs (i.e., those with more than 1250 budgeted units in the program), the PHA need only complete the inspection within fifteen days "[t]o the extent practicable." § 932.305(b). Thus, the regulations creating the inspection requirement provide broad discretion for PHAs and do not confer on tenants any right to an expedited inspection, however desirable one may be.

Because Plaintiffs fail to establish a plausible property interest in any of the accommodations that they requested, and because Plaintiffs do not identify any other potential interests of which Defendants deprived them, Plaintiffs' due process claims against the LRHA Defendants, VHDA Defendants, CVHC Defendants and Boulder Defendants must fail.

## 2. *The Court Will Dismiss Plaintiffs Constitutional Claims Against the HUD Defendants.*

The Court assumes that Plaintiffs bring their constitutional due process claims against the HUD Defendants pursuant to *Bivens v. Unknown Named Agents*, 403 U.S. 338 (1971). A *Bivens*

action is a judicially created monetary remedy designed to vindicate violations of constitutional rights by federal actors in their individual capacities. *Bivens*, 403 U.S. at 395–97 (1971).  As such, a plaintiff cannot use a *Bivens* action to seek monetary damages from either a federal agency or federal officials in their official capacities. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002); *see also Meyer*, 510 U.S. at 484–86 (holding that a *Bivens* action is unavailable against agencies); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal government.").  Absent a waiver, sovereign immunity shields the federal government, its agencies and its officials in their official capacity from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 244 (1940)).  Therefore, Plaintiffs are barred from bringing their due process claims against HUD in any capacity or against the individual HUD Defendants in their official capacities.

To the extent that Plaintiffs bring their due process claims against the individual HUD Defendants in their individual capacities, Plaintiffs must allege that the individual HUD Defendants "acting under color of [their federal] authority" violated Plaintiffs' constitutional rights. *Id.* at 389.  However, as with the other Defendants, Plaintiffs have not alleged any facts from which the Court can infer a constitutional violation by the individual HUD Defendants.

In support of their due process claims against the HUD Defendants, Plaintiffs allege that Plaintiff Elizabeth Fedynich called Defendant Crook following the LRHA's denial of Plaintiffs' accommodation request.  (Am. Compl. at 12.)  Plaintiffs assert that Defendants Crook and Henry's involvement included "hostility and a blatant disregard and ignorance of and unwillingness to apply HUD laws."  (Am. Compl. at 12.)  Moreover, Plaintiffs allege that Defendant Henry made unspecified discriminatory comments "about Plaintiffs' disabilities as

they relate to [COVID-19]." (Am. Compl. at 12.)  And Plaintiffs allege that Defendant Schmidt "refused to communicate" with Plaintiffs regarding an unspecified accommodation request. (Am. Compl. at 12.)  Defendant Schmidt also allegedly failed "to direct her staff to apply HUD laws as they pertain to reasonable accommodation requests." (Am. Compl. at 12.)  Although Plaintiffs never assert that they asked either Defendant Schmidt or Defendant Davenport for any accommodations, Plaintiffs allege that both Defendant Schmidt and Defendant Davenport nonetheless failed to engage in an interactive process. (Am. Compl. at 12.)

These factual assertions do not give rise to any discernable constitutional violations. Plaintiffs neither identify a cognizable liberty or property interest, nor allege how the HUD Defendants deprived them of that interest without due process of law.  And to the extent that Plaintiffs argue that Defendants were rude and uninformed on the relevant laws, the rudeness and ignorance of government officials, however regrettable, does not constitute a due process violation.

Ultimately, because Plaintiffs fail to allege any cognizable liberty or property interest or any actions by the HUD Defendants that deprived them of that interest, the Court will dismiss all due process claims against the HUD Defendants.

## IV.     CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motions to Dismiss (ECF No. 37, 41, 43, 45, 61) and DISMISSES WITHOUT PREJUDICE all claims by Plaintiffs against Defendants.  An appropriate order shall issue.

26

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record and any unrepresented party

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Date:  September 8, 2020

27